***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments of the parties. With reference to the errors assigned by plaintiff, the Full Commission finds that plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUES TO BE DETERMINED
Whether plaintiff is disabled from employment and therefore entitled to ongoing disability compensation.
 *********** *Page 2 
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. The date of the alleged injury, which is the subject of this claim, is November 13, 2006.
2. The parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between plaintiff-employee and defendant-employer.
4. On such date, defendant-employer employed three or more employees.
5. On such date, the carrier of workers' compensation insurance in North Carolina for defendant-employer was First Comp Insurance Company.
6. Plaintiff's average weekly wage is $332.45.
7. The parties participated in a mediated settlement conference on January 7, 2008. Defendants have paid the entire mediation fee in the amount of $568.75. Pursuant to Rule 7(c) of the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission, defendants are entitled to a credit in the amount of $284.37 for payment of plaintiff's share of the mediation costs and defendants may withhold funds from any award for this purpose.
8. At the hearing, the parties submitted the following: *Page 3 
 a. A Packet containing Industrial Commission Forms, Personnel File, Discovery and Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2) and;
 b. Photographs of Plaintiff, which were admitted into the record and collectively marked as Stipulated Exhibit (3).
9. Also submitted by the parties and made part of the record are the depositions of Terry Laws, RN, BSN, Dr. Eric Alan Mair and Dr. Devendra Shah.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-two (52) years of age.
2. Plaintiff is a high school graduate, who attended approximately three years of college taking computer programming and executive secretary courses. Plaintiff also has certificates for CAP training, which permits her to work with autistic children.
3. From April 2006 to November 2006, plaintiff was employed by defendant-employer as a residential counselor. Defendant-employer operates three residential facilities with three to four children living in each house. Their business involves teaching children how to live on their own, including how to wash their clothes and keep their rooms clean.
4. Based on their needs, the children residing in the facilities were divided into different classifications. Children classified as Level 2 were preparing to graduate from high school and needed some supervision and guidance. Level 3 Classification was reserved for *Page 4 
aggressive children, who required much more involvement to learn how to control themselves and become productive members of society. Plaintiff worked at both the Level 2 and Level 3 Classification residences.
5. On November 13, 2006, plaintiff was working the third shift at the Level 3 residence. Upon her arrival at midnight, the second shift employees prepared to leave the facility. Plaintiff escorted the two employees out of the home and locked the door after they exited. It is normal protocol to keep the doors locked during the third shift.
6. There were four teenagers inside the home during Plaintiff's shift that evening, ranging in age from fourteen to sixteen (14-16) years old. As plaintiff was returning to her office, she saw three of the teenagers, all boys, in the kitchen. After entering the kitchen, plaintiff was knocked down and attacked by the boys. During the attack, plaintiff was beaten violently about the head and body with a trophy and a radio/compact disc player. Also during the attack, plaintiff pleaded for her life.
7. When the attack ended, the assailants took plaintiff's keys and left the residence. After the three teenagers left the residence, the remaining teenager who was not involved in the attack assisted plaintiff in locating a telephone to call for emergency assistance.
8. The compensability of this incident was admitted by defendants through the filing of an Industrial Commission Form 60.
9. Plaintiff was then transported to the emergency room of Carolinas Medical Center-Union via an ambulance. At that facility, plaintiff was treated for a concussion, a laceration of the scalp and injuries to the right side of her head, her right eye and the right side of her abdomen. CT scans were negative for fractures. Plaintiff was discharged later that same day and was medically excused from work through November 21, 2006. *Page 5 
10. On November 19, 2006, plaintiff returned for a follow-up examination of her right eye and received sutures for her scalp laceration.
11. Defendants directed plaintiff to seek treatment from her regular optometrist, Dr. Perry Patel, for complaints of blurry vision in her right eye. Dr. Patel opined that plaintiff's right eye was within normal limits and provided her with glasses having the same prescription as prior to the accident. As for any restrictions plaintiff may have had at that time, because Dr. Patel did not feel he could address the return-to-work issue, he would not assign work restrictions.
12. On December 14, 2006, plaintiff underwent a clinical assessment at Daymark Recovery Services, Inc., which was provided free of charge. The providers at Daymark Recovery Services, Inc. diagnosed plaintiff as having post-traumatic stress disorder.
13. On January 3, 2007, Dr. Darron Smith evaluated plaintiff and diagnosed her as having tinnitus and a facial trauma as the result of her assault. Dr. Smith opined that plaintiff's tinnitus was secondary to her assault-related concussion and should improve over time. Plaintiff also reported experiencing blurred vision for which Dr. Smith recommended that she follow-up with an eye exam.
14. On April 10, 2007, Dr. Eric Mair at Charlotte Eye, Ear, Nose and Throat evaluated plaintiff for facial trauma with swelling of the left eye. Dr. Mair found no signs of head or neck deformities other than intraorbital edema (minimal swelling underneath the eye). Dr. Mair ordered a CT scan of the sinuses and orbit, which revealed no evidence of facial/sinus injury. Dr. Mair also referred plaintiff for an occuloplastic surgical consult.
15. Dr. Mair last examined plaintiff on June 19, 2007 and at that time, did not provide her with further treatment recommendations or address her ability to return to work. Nonetheless, during a meeting with the nurse case manager assigned by defendants on October *Page 6 
12, 2007, Dr. Mair signed a report indicating his opinion that plaintiff had reached maximum medical improvement and released her to return to work with no restrictions. Dr. Mair's written opinion was given without having re-examined plaintiff. Additionally, during his deposition, Dr. Mair testified that his opinion was from an ENT doctor's perspective.
16. Dr. Mair could not give an opinion within a reasonable degree of medical certainty that plaintiff's intraorbital edema was related to her November 13, 2006 injury by accident.
17. On December 14, 2007, Thomas Hill, MA, LPC, at Daymark Recovery Services wrote a letter stating that plaintiff had been under his care since December 14, 2006 for symptoms associated with post-traumatic stress disorder (PTSD). Mr. Hill opined that plaintiff's PTSD related symptoms interfered with her ability to work by impairing her ability to set goals, complete tasks, maintain a steady work routine, maintain concentration, interact appropriately with others, and maintain a regular work schedule with an acceptable number of absences.
18. On July 5, 2007, Dr. Devendra Shah, a psychiatrist at Daymark Recovery Services, also examined plaintiff for her PTSD. Based upon her PTSD related symptoms, Dr. Shah opined that plaintiff was not capable of returning to work. Subsequently, Dr. Shah opined that plaintiff might benefit from vocational rehabilitation with a goal of eventually returning to some form of employment.
19. Dr. Shah has opined to a reasonable degree of medical certainty that the traumatic events surrounding plaintiff's November 13, 2006 attack caused the development of her PTSD.
20. The Full Commission finds as fact that plaintiff has PTSD and that plaintiff's admittedly compensable November 13, 2006 attack caused or significantly contributed to the development of her PTSD. *Page 7 
21. Based upon the totality of the credible lay and medical evidence of record, the Full Commission gives greater weight to the testimony and medical opinions of Dr. Shah regarding plaintiff's ability to return to work as opposed to those of Dr. Mair. Dr. Mair rendered his opinions from only a physical standpoint and did not consider plaintiff's causally related PTSD.
22. When considering all of the expert opinions regarding plaintiff's ability to return to work, the suspension of her ongoing temporary total disability benefits was improper.
23. The Full Commission finds that plaintiff would benefit from vocational rehabilitation. To date, defendants have not provided the recommended vocational rehabilitation to plaintiff.
24. Based upon the credible medical and vocational evidence of record, as a result of her November 13, 2006 admittedly compensable injury by accident and her causally related PTSD, plaintiff has been unable to earn any wages in her former position with defendant-employer or in any other employment for the period from November 14, 2006 through the present and continuing.
25. Plaintiff's average weekly wage was $332.45, which yields a compensation rate of $221.45.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage was $332.45, which yields a compensation rate of $221.45. N.C. Gen. Stat. § 97-2(5). *Page 8 
2. On November 13, 2006, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer resulting in physical and psychological injuries. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's admittedly compensable November 13, 2006 attack caused or significantly contributed to the development of her post-traumatic stress disorder. N.C. Gen. Stat. § 97-2(6);See, e.g., Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
4. Based upon the credible medical and vocational evidence of record, as a result of her November 13, 2006 admittedly compensable injury by accident and causally related PTSD, plaintiff has been incapable of working in any employment since November 13, 2006 and is entitled to be paid by defendants ongoing temporary total disability compensation at the rate of $221.45 per week for the period of November 14, 2006 through the present and continuing until such time as she returns to work, or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). This compensation is subject to the credit in defendants' favor for the compensation already paid and for plaintiff's portion of the mediator's fee. Id.
5. As a result of her November 13, 2006 admittedly compensable injury by accident and causally related PTSD, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses related to treatment for post-traumatic stress disorder, when bills for the same have been submitted in accordance with proper Industrial Commission procedure. N.C. Gen. Stat. §§ 97-25; 97-25.1. Dr. Devendra Shah is approved as plaintiff's authorized treating physician for her post-traumatic stress disorder. Defendants shall authorize and pay for all reasonable medical treatments recommended by Dr. Shah. Id. *Page 9 
6. Plaintiff is entitled to have defendants provide vocational rehabilitation as recommended by Dr. Shah with the goal of possibly returning her to suitable employment.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing temporary total disability compensation at the rate of $221.45 per week for the period from November 14, 2006 through the present and continuing until such time as she returns to work, or further Order of the Commission. This compensation is subject to the credit in defendants' favor for the compensation already paid and for plaintiff's portion of the mediator's fee.
2. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses related to treatment for post-traumatic stress disorder, when bills for the same have been submitted in accordance with proper Industrial Commission procedure.
3. Dr. Devendra Shah is approved as plaintiff's authorized treating physician for her post-traumatic stress disorder. Defendants shall authorize and pay for all reasonable medical treatments recommended by Dr. Shah as well as the vocational rehabilitation he recommended.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs. *Page 10 
This the ___ day of August, 2009.
S/___________________
BERNADINE S. BALLANCE
COMMISSIONER
CONCURRING:
S/___________________
CHRISTOPHER SCOTT
COMMISSIONER
S/___________________
DANNY L. McDONALD
COMMISSIONER
 *Page 1